## IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF OKLAHOMA

TODD STACEY DIX,                )
                                )
            Plaintiff,          )
                                )
v.                              )     Case No. CIV-10-324-JHP
                                )
MICHAEL J. ASTRUE,              )
Commissioner of Social          )
Security Administration,        )
                                )
            Defendant.          )

### REPORT AND RECOMMENDATION

Plaintiff Todd Stacey Dix (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be AFFIRMED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social

Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ."   42 U.S.C. §423(d)(2)(A).   Social Security regulations implement a five-step sequential process to evaluate a disability claim.  *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g).   This Court's review is limited to two inquiries:   first, whether the decision was supported by

---

[1]   Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910.   Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities.  20 C.F.R. §§ 404.1521, 416.921.   If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied.   At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1.   A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry.   If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work.   If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform.   Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work.  *See generally,* <u>Williams v. Bowen</u>, 844 F.2d 748, 750-51 (10th Cir. 1988).

substantial evidence; and, second, whether the correct legal standards were applied. <u>Hawkins v. Chater</u>, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971) (quoting <u>Consolidated Edison Co. v. NLRB</u>, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. <u>Casias v. Secretary of Health & Human Servs.</u>, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." <u>Universal Camera Corp. v. NLRB</u>, 340 U.S. 474, 488 (1951); <i>see also</i>, <u>Casias</u>, 933 F.2d at 800-01.

### Claimant's Background

Claimant was born on December 7, 1970 and was 40 years old at the time of the ALJ's decision. Claimant completed his high school education and received specialized computer training while in the Air Force. Claimant worked in the past in general clerical work and customer service work. Claimant alleges an inability to work

3

beginning December 31, 2005 due to gout, depression, and problems with his back, arms, and hands.

## Procedural History

On August 21, 2007, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) and supplemental security income pursuant to Title XVI (42 U.S.C. § 1381, *et seq.*) of the Social Security Act. Claimant's applications were denied initially and upon reconsideration. On January 13, 2010, an administrative hearing was held before ALJ Deborah L. Rose. On February 3, 2010, the ALJ issued an unfavorable decision on Claimant's applications. On July 23, 2010, the Appeals Council denied review of the ALJ's decision. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made her decision at step four of the sequential evaluation. She determined that while Claimant suffered from severe impairments, he retained the residual functional capacity ("RFC") sufficient to perform his past relevant work in customer service and general clerical work.

### Errors Alleged for Review

Claimant asserts the ALJ committed error in: (1) failing to consider all of the medical evidence and the combined effect of Claimant's impairments; (2) engaged in a faulty credibility determination; (3) finding Claimant could perform his past relevant work; and (4) reaching her RFC assessment that Claimant could perform light work.

### Consideration of the Medical Evidence and the Evaluation of Claimant's Credibility

From April 19, 2005 to April 10, 2007, Claimant was treated at the Choctaw Nation Indian Health Center and Rubin White Health Clinic for, among other conditions, gout, chronic back pain, chronic neck pain, chronic right shoulder pain, obesity, and hypertension. (Tr. 284-321). He received medications for the conditions.

From April 6, 2006 to January 30, 2007, Claimant was treated at the Veterans Administration Hospital in Arkansas. Claimant was diagnosed during this time with, among other conditions, gout, degenerative disc disease, cervical spine stenosis, hypertension, anxiety disorder, numbness and tingling in the right hand, and sleep problems. (Tr. 233-80).

From March 30, 2006 to April 15, 2008, Claimant received treatment from the Veterans Administration for bilateral carpal

tunnel syndrome, gout, degenerative disc disease, cervical spine stenosis, chronic back pain, lumbago, neck pain, osteoarthritis, ankle pain, hypertension, hernia, obesity, depressive disorder, anxiety disorder, and personality disorder. (Tr. 330-77, 675-717).

Additional records from the Veterans Administration Hospital from May 12, 2008 to November 24, 2009 indicate Claimant was treated for degenerative disc disease, cervical spine stenosis, low back pain, neck pain, shoulder pain, obesity, gout, hypertension, depression, anxiety disorder, and personality disorder. (Tr. 721-817).

Beginning May 2, 2006 and continuing through January 30, 2007, Claimant was evaluated by Dr. Gloria J. Miller, a staff psychologist for the Veterans Administration. Dr. Miller diagnosed Claimant at Axis I:  Anxiety Disorder; Axis II:  Personality Disorder, NOS; Axis III:  Deferred; Axis IV:  Not working, trying to start a business, entanglement with a [Vietnamese] lady he married to get her into the country, entanglement with ex-wife; Axis V:  GAF of 70.  Last GAF Score:  None.  (Tr. 234, 259, 365).

On February 9, 2007, Claimant was evaluated by Dr. Ryan Aldrich, complaining of bilateral paralysis of the hands, chronic pain in the back, chronic gout, arthritis in the neck, arthritis in both feet, chronic pain in the neck, shoulder, and hands.  (Tr.

641). Dr. Aldich found Claimant suffered from neck and back pain, non-specific, tingling in the hands bilaterally which he cannot lateralize to the medial or lateral aspect of the hands and which did not appear to follow any type of a dermatomal pattern. Dr. Aldrich also found Claimant suffered from depression and anxiety and a history of gout, without evidence of gout on the day of examination. (Tr. 643).

On April 9, 2007, Claimant was evaluated by Dr. Geo Chacko for neck tension with radiculopathy, narrowing of C3-4, slight encroachment of C4-5, and low back strain. (Tr. 281). Dr. Chacko changed the diagnosis to IVDS Dorsal Scapular Nerve with Large Osteophyte at C3-4. The change was made due to subjective pain, and objectively through x-ray and an abnormal physical examination. No change was made in the prior diagnosis of lumbosacral strain. (Tr. 283).

On February 6, 2008, Claimant underwent a Diagnostic Interview and Mental Status Examination by Dr. Theresa Horton, a licensed psychologist. Claimant provided for his personal hygiene, with pain. He lives with his parents, enjoys television and reading, uses the computer, internet, and plays video games. (Tr. 636). Claimant's appearance, behavior, and speech were essentially normal. (Tr. 637). His thought processes were logical, organized,

and goal-directed.  He had a history of suicidal ideation years ago with no attempts and no current plans or intentions.  Claimant has no history of hallucinations.  His mood was depressed and anxious.  His affect was congruent and expressive.  He was well-oriented, and his judgment and insight were good.  Dr. Horton diagnosed Claimant at Axis I:   Major Depressive Disorder, Recurrent, Severe, Dysthymia, Early Onset, Generalized Anxiety Disorder; Axis II: Personality Disorder, NOS with prominent dependent traits; Axis III:  Chronic Pain, Gout, HBP, Arthritis; Axis IV:  Housing, Finances, Isolation, Family Situation - Separated From His Children.  (Tr. 638).

Dr. Horton concluded that Claimant

appears capable of understanding and managing simple and complex instructions and tasks.  He appears emotionally and socially capable of adjusting into an occupational setting, yet complains of serious chronic pain that appears to be the larger barrier to his employment by his self report.   His presentation appears honest and genuine.   He has good insight, and if given the opportunity, would likely benefit from further counseling.

(Tr. 639).

On March 4, 2008, Dr. Karen Kendall prepared a Psychiatric Review Technique on Claimant's mental condition covering the period from December 31, 2005 to February 21, 2008.  Dr. Kendall diagnosed Claimant with Affective Disorders - including sleep

disturbance, decreased energy or feelings of guilt or worthlessness, Anxiety-Related Disorders, and Personality Disorders. She determined these impairments were not severe. Dr. Kendall found Claimant had mild limitations in the areas of restriction of activities of daily living and difficulties in maintaining concentration, persistence, or pace and insufficient evidence of whether Claimant suffered episodes of decompensation, each of extended duration. Dr. Kendall found Claimant indicated no problem with memory, following instructions, or concentrating. (Tr. 648-60).

On March 4, 2008, Dr. Luther Woodcock completed a Physical Residual Functional Capacity Assessment on Claimant with a primary diagnosis of osteoarthritis and a secondary diagnosis of gout. Dr. Woodcock found Claimant could occasionally lift and/or carry 50 pounds, frequently lift and/or carry 25 pounds, stand and/or walk for about 6 hours in an 8 hour workday, sit about 6 hours in an 8 hour workday, and unlimited pushing and/or pulling. Dr. Woodcock found no other limitations. (Tr. 662-69).

In her decision, the ALJ found Claimant suffered from the severe impairments of degenerative disc disease, degenerative joint disease of cervical spine, and a history of gout. (Tr. 15). She also found Claimant retained the RFC to perform light work

9

except lift and/or carry 10 pounds frequently and 20 pounds occasionally, stand and/or walk 6 hours, sit 6 hours, no foot controls or hand controls, occasional climbing, balancing, stooping, kneeling, crouching, or crawling, and occasional work above the shoulder. (Tr. 20). Based upon the testimony of the vocational expert, the ALJ concluded Claimant could perform the past relevant work in customer service and a general clerical worker. (Tr. 25-26).

Claimant first contends the ALJ disregarded Claimant's testimony regarding his inability to stand for extended periods and his difficulty sleeping. This argument touches upon an issue raised separately by Claimant - that the ALJ engaged in a deficient credibility analysis. Claimant testified he could sit or stand no more than 15 to 20 minutes at a time. (Tr. 20, 38). At differing times, Claimant also testified he could not sit or stand more than 10 minutes (Tr. 21, 163), he had lost weight by walking in a circle in his yard for 40 minutes (Tr. 21, 49), and he regularly drove 30 minutes to visit friends. (Tr. 17, 21, 158). Claimant's activities of preparing meals, shopping, performing household tasks are inconsistent with his claimed limitations.

It is well-established that "findings as to credibility

should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995). "Credibility determinations are peculiarly in the province of the finder of fact" and, as such, will not be disturbed when supported by substantial evidence. Id. Factors to be considered in assessing a claimant's credibility include (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. Soc. Sec. R. 96-7p; 1996 WL 374186, 3. In this case, the ALJ properly linked his findings on credibility to the medical record. Moreover, while Claimant repeatedly protests that he suffers from

degenerative disc disease and degenerative joint disease, he apparently seeks to have this Court draw a direct connection between his condition and his alleged limitations and impose its own medical opinion. No medical professional has imposed the extent of limitation upon Claimant's ability to work that he now argues. This Court cannot infer the level of limitation Claimant urges without objective medical evidence in the record to support it. Consequently, this Court finds no error in the ALJ's RFC determination concerning an inability to stand or sleep problems.

Claimant next contends the ALJ should have considered his obesity in combination with his other impairments. Claimant admits that he never claimed obesity as a disability in this case. He also correctly notes that the ALJ states she considered his obesity in assessing his limitations. (Tr. 16). The medical evidence reveals Claimant weighed between 262 and 276 pounds and was six feet one inch in height. (Tr. 235, 289, 359). Given these facts, Claimant can be considered obese.

An ALJ is required to consider "any additional and cumulative effects" obesity may have upon other conditions from which a claimant suffers, recognizing that obesity combined with other impairments may increase the severity of the condition. Soc. Sec. R. 02-1p; 20 C.F.R. Pt. 405, Subpt. P, App. 1 § 1.00(Q)(combined

effect with musculoskeletal impairments).  At step three, "a listing is met if there is an impairment that, in combination with obesity, meets the requirements of a listing."  Soc. Sec. R. 02-1p.  "[O]besity may increase the severity of coexisting or related impairments to the extent that the combination of impairments meets the requirements of a listing.  This is especially true of musculoskeletal, respiratory, and cardiovascular impairments."  Id. "Obesity in combination with another impairment may or may not increase the severity or functional limitations of the other impairment."  Each case is evaluated on information in the case record.  Id.

The ALJ states that she considered Claimant's obesity in assessing her RFC for Claimant.  Other than speculating that Claimant's obesity exacerbated her other medical conditions, Claimant failed to meet her burden to demonstrate obesity had any effect upon the disability determination.  As recognized by the Tenth Circuit Court of Appeals, speculation upon the effect of obesity is discouraged.[2]  See, Fagan v. Astrue, 2007 WL 1895596, 2 (10th Cir.).  It is Claimant's burden at step four to establish "that the impairment or combination of impairments prevents h[er]

---

[2] "[W]e will not make assumptions about the severity or functional effects of obesity combined with other impairments."  Soc. Sec. R. 02-01p.

13

from performing h[er] past work." Grogan v. Barnhart, 399 F.3d 1257, 1261 (10th Cir. 2005) quoting Williams v. Bowen, 844 F.2d 748, 750-752 (10th Cir. 1988).   Claimant has failed in this evidentiary burden.

Claimant also argues the ALJ failed to consider his subjective complaints of pain.   Claimant again repeats his diagnosis and seeks to have this Court draw the conclusion that his condition produced the pain and limitations to which he testified.   The ALJ properly assessed Claimant's credibility, engaging in an extensive analysis of the testimony and medical evidence.   This Court finds no error in the assessment.

### Step Four Analysis

Claimant asserts the ALJ committed error in determining he could perform his past relevant work at step four.   In analyzing Claimant's ability to engage in his past work, the ALJ must assess three phases.   In the first phase, the ALJ must first determine the claimant's RFC.   Winfrey v. Chater, 92 F.3d 1017, 1023 (10th Cir. 1996).   This Court has discussed the ALJ's findings on Claimant's RFC and found no error.

In the second phase, the ALJ must determine the demands of the claimant's past relevant work.   Id.   In making this determination, the ALJ may rely upon the testimony of the

vocational expert.  Doyal v. Barnhart, 331 F.3d 758, 761 (10th Cir. 2003).  The ALJ in this case inquired of the vocational expert as to the demands of Claimant's past relevant work.  (Tr. 51).  The expert testified the general clerical worker requires the ability to perform light work while the customer service worker must be able to perform sedentary work.  (Tr. 52).  The ALJ also inquired as to other physical demands of these jobs.  (Tr. 53).  In this regard, the ALJ fulfilled her duty in the second phase.

The third and final phase requires an analysis as to whether the claimant has the ability to meet the job demands found in phase two despite the limitations found in phase one.  Winfrey, 92 F.3d at 1023.  The ALJ asked the vocational expert whether someone at Claimant's determined RFC could perform the jobs which constituted Claimant's past relevant work.  Consequently, the ALJ fulfilled her obligation in the third phase.  This Court finds no fault in the ALJ's step four analysis.

### Conclusion

The decision of the Commissioner is supported by substantial evidence and the correct legal standards were applied.  Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security

Administration should be **AFFIRMED**.  The parties are herewith given fourteen (14) days from the date of the service of these Report and Recommendation to file with the Clerk of the court any objections, with supporting brief.  Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this ⁷⁴ʰ day of September, 2011.

KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE

16